THE STATE OF MISSOURI, Respondent, v. PRES-
TON W. BUSH, Appellant.

**Kansas City Court of Appeals, April 19, 1909.**

1. **COUNTY COURTS: Adjournment: Nunc Pro Tunc Order: Pre-
sumptions.** Various sessions of a county court record recited
that the court met pursuant to adjournment although there was
no record showing an adjournment at some of the previous
sittings. *Held,* that the above recitation and the evidence
taken in connection with the presumption of law that a court of
record while sitting is lawfully assembled, is a sufficient basis
for a *nunc pro tunc* entry showing an adjournment of the
court at the said several sessions.

2. **CRIMINAL LAW: Dramshops: Local Option: Result of Elec-
tion: Publication.** An order of the county court directing the
result of a local option election to be published is sufficient to
make a prima facie case, and the State does not have to show
in the prosecution for violating such law that such result was
in fact published, since the burden to show a failure of such
publication is upon the defendant.    [Syllabus in State v.
Searcy, 39 Mo. App. 393, criticized.]

3. ——: ——: ——: **Venue: Judicial Notice.** The court
takes judicial notice of the boundaries of a county but.it can-
not determine that a village is in the county by the mere
description that it is so far from an incorporated town; and on
reviewing the evidence it is held that the record does not con-
tain sufficient proof of the venue.

Appeal from Gentry Circuit Court.—*Hon. William C.
Ellison,* Judge.

REVERSED AND REMANDED.

*J. W. Peery* for appellant.

(1)    The session of the county court on July 18,
1906, when the order for the election was made, was not
a legal meeting.    County courts are courts of record;
their acts and proceedings can only be known by their
record, and cannot be proven by parol.    Dennison v.
St. L. Co., 33 Mo. 168; Maupin v. Franklin Co., 67

Mo. 327; Riley v. Pettis Co., 96 Mo. 318; Johnson Co. v. Wood, 84 Mo. 489; State ex rel. v. Baldwin, 109 Mo. App. 579. (2) County courts may hold adjourned terms, but such adjourned terms are mere continuations of the regular terms, and of course the record of the court must show the adjournment, in order to show the continuity of the term. Rose v. Kansas City, 128 Mo. 140; State ex rel. v. Railroad, 101 Mo. 137; Higgins v. Ransdall, 13 Mo. 205; Fannon v. Plumber, 30 Mo. App. 25; State ex rel. v. Ross, 118 Mo. 47; State ex rel. v. Hixon, 41 Mo. 210; Holman v. Hogg, 83 Mo. App. 370; Cook v. Penrod, 111 Mo. App. 128; Stovall v. Emmerson, 20 Mo. App. 322; Freeman, Judg., sec. 121; Gimmert v. Askew, 48 Ark. 151, 2 S. W. 707; 8 Am. and Eng. Enc. L. (2 Ed.), p. 24, and notes. (3) The *nunc pro tunc* entries by which the court attempted to supply the omissions of the adjourning orders from its records, were void. A *nunc pro tunc* entry can only be based upon some record, or the judge's docket, or the minute book of the clerk. Paige v. Chapin, 80 Mo. App. 159; State ex rel. v. Baldwin, 109 Mo. App. 573; Burns v. Sullivan, 90 Mo. App. 1; Brd., etc., v. Drummond, 167 Mo. 54; Becher v. Deuser, 169 Mo. 159; Belkin v. Rhodes, 76 Mo. 562; Sweet v. Maupin, 65 Mo. 65; State v. Griffie, 118 Mo. 199; Gage v. Vail, 78 Mo. 454; Norton v. Porter, 63 Mo. 345; Foster v. Walden, 21 Mich. 507; K. C. Pump Co. v. Jones, 126 Mo. App. 536; 17 Am. and Eng. Enc. L. (2 Ed.), pp. 848, 849; Callihan v. Griswold, 9 Mo. 784; Myers v. Miller, 55 Mo. App. 338. (4) The burden was on the State to prove the publication of the result of the election, as a condition precedent to a conviction. State v. Hutton, 39 Mo. App. 419; State v. Searcy, 46 Mo. App. 422, 111 Mo. 236; State v. Dugan, 110 Mo. 138; 19 Am. and Eng. Enc. L. (2 Ed.), p. 514; Black on Intox. Liq., sec. 98; Toole v. State, 88 Ala. 158, 7 So. 42; Phillips v. State, 23 Tex. App. 304, 4 S. W. 893; Akin v. State, 14 Tex. App. 142; Loveless v. State, 40 Tex.

Crim. 221, 49 S. W. 892; Langford v. Few, 146 Mo. 154; Reed v. Lowe, 163 Mo. 533; Cummings v. Brown, 181 Mo. 711; Bick v. Tanzey, 181 Mo. 515. (5) This judgment must be reversed because the venue laid in the indictment was not proved. State v. Hottle, 104 Mo. App. 34; State v. King, 111 Mo. 576.

*Chas. E. Gibbany,* Prosecuting Attorney, *C. H. S. Goodman* and *Kelso & Kelso* for respondent.

(1) Proceedings showing the adoption of the local option law in Gentry county. The statute provides that the county courts of the several counties shall hold four stated or regular terms of court each year, to-wit: on the first Mondays in February, May, August and November. R. S. 1899, sec. 1783; R. S. 1899, sec. 1787. "A term of court," as used in this statute means the period from the first day of a term fixed by law until court is adjourned to court in course, and the word "vacation" means the period between the day of final adjournment and the next term of court. State v. Derkum, 27 Mo. App. 268; Hadley v. Bernero, 97 Mo. App. 319; Warner v. Donahue, 99 Mo. App. 44; State ex rel. v. Railroad, 101 Mo. 150; Fannon v. Blumber, 30 Mo. App. 25; 1 Enc. of Pl. and Pr., p. 245; State v. Bonham, 19 Kan. 29; Langhorn v. Waller, 76 Va. 213; Union Pr. Co. v. Hand, 7 Kan. 380; Labradie v. Dean, 47 Tex. 100; Cole County v. Dallmyer, 101 Mo. 57; Bowen v. Stewart, 128 Ind. 507; Horton v. Sims, 88 Ga. 617; 1 Ency. of Pl. and Pr., p. 242. (2) The county court of Gentry county in the exercise of its power and duties as a court, had the right to order the entries of adjournment *nunc pro tunc.* Dawson v. Waldheim, 89 Mo. App. 245; Witten v. Robison, 31 Mo. App. 525; Railroad v. Mockbee, 63 Mo. 348; Gibson v. Chouteau, 45 Mo. 171; State v. Bird, 108 Mo. App. 169; 1 Ency. of Pl. and Pr., p. 931; Gillett v. Booth, 95 Ill. 185; Railroad v. Holbrook, 72 Ill. 419; Whittaker v. Gee, 63 Tex. 435; Ximenas v. Ximenas, 43 Tex. 464; Priest v. McMasters, 52 Mo. 60;

Gamble v. Daugherty, 71 Mo. 599; Hansburt v. Fugs, 80 Mo. 377; Atkinson v. Railroad, 81 Mo. 50; Ross v. Railroad, 141 Mo. 390; Sperling v. Stubblefield, 105 Mo. App. 493; Cook v. Penrod, 111 Mo. App. 128; 1 Greenleaf on Evidence, sec. 19; State v. Thompson (La.), 46 So. 1013; Jillette v. Bank, 56 Mo. 304; Turner v. Christy, 50 Mo. 145; 17 Enc. of Pl. and Pr., 17, 913; Doane v. Glenn, 1 Colo. 456. (3) Proof of publication of the result of election. Long v. Joplin M. & S. Co., 68 Mo. 431; Lamax v. Harrison, 88 Mo. 496; State ex rel. v. Bank, 120 Mo. 169; Meddis v. Kenny, 176 Mo. 209; State v. Vaughn, 112 S. W. 730; State v. Kellogg, 113 S. W. 662; 1 Phil., Ev. (Cowen Hill's Notes), pp. 604, 605. (4) Appellant's request that State v. Oliphant, 128 Mo. App., is under the circumstances, peculiar, and was no doubt, dictated by the exigencies of the situation rather than by his innate modesty. To overrule the Oliphant case is to ignore the following cases: State v. Searcy, 39 Mo. App. 392; State v. Hutton, 39 Mo. App. 410; State v. Forman, 121 Mo. App. 502; State v. Seigenthaler, 121 Mo. App. 510. (5) The defendant seeks now to raise for the first time the question that the evidence introduced was not sufficient to prove the venue. We concede that the evidence might have been more direct and positive, but the venue will be sufficiently proven if from all of the facts and circumstances in evidence it may be fairly inferred. State v. Bailey, 73 Mo. App. 576; State v. Forrester, 63 Mo. App. 534; State v. Burnes, 48 Mo. 438; State v. West, 69 Mo. 404; State v. McGinnis, 76 Mo. 326; State v. Hill, 96 Mo. 358; State v. Sanders, 106 Mo. 188; State v. Pennington, 124 Mo. 392.

BROADDUS, P. J.—The defendant was indicted, tried and convicted in the Gentry Circuit Court for the illegal sale of intoxicating liquor in violation of the Local Option Law. From the judgment of conviction, he appealed.

The indictment averred that the Local Option Law was adopted within all that portion of Gentry county outside of the limits of the city of Stanberry, a city of more than twenty-five hundred inhabitants, and that the defendant unlawfully sold certain intoxicating liquors outside of said city limits in said county.

The State introduced in evidence a certified copy of the record of the county court of date of August 20, 1906, showing the declaration of the result of an election held on the 17th day of August, 1906, in the county, to determine whether or not intoxicating liquors should be sold in the county ouside of the city of Stanberry; and proved a sale of liquor by defendant in November following and rested its case. Whereupon defendant asked a peremptory instruction to the jury to find defendant not guilty, which the court refused.

For the purpose of attacking the validity of the proceedings, certain records of the county court were introduced by the defendant. The record shows that the county court met on Monday, May 7, 1906, in regular session, and was in session on May 9th, June 4th, June 6th, July 2nd, and July 18th. At all these different meetings, except the first and last, the record recites that the "Court met pursuant to adjournment, all the members being present." There was no order of adjournment entered upon the court's minutes at the olose of the day of 7th of May, the first day of its regular session. And no such entries were made when the court adjourned on May 9th, June 4th and July 2nd, but a final entry of adjournment was made on the 18th of July. It was on the last-named date that the order for the election was made.

At the regular January term of the court for 1907, the court made the following entry of record: "Whereas, it appearing to the court by an inspection of its records and the judges' notes that this court has inadvertently failed to enter upon its records its order of adjournment made by this court on the 7th day of May, 1906, whereby

this court ordered its adjournment to meet on the 9th day of May, 1906; now, therefore, it is ordered by this court that said order of adjournment be entered upon the records of this court, now for then, in the following words and figures, to-wit:ʻ It is ordered that this court do now adjourn to meet on the 9th day of May, 1906." A similar entry was made as to the sessions of the court of June 4th and July 2d, 1906. The evidence showed that these *nunc pro tunc* orders were made without there being any contemporaneous entry, or memorandum, or writing upon the minute book, or any docket, or any other record of the court.

The validity of the election turns upon the question whether the court that made the order for such election was properly convened on July 18th, when the order was made for holding it.

It may be conceded that, "A court may, in the exercise of its common law power, when the state of the records kept by the court or the clerk show that a suitor was entitled to a particular judgment, but that the judgment was not entered at the term when it should or might have been entered, at a subsequent term cause the proper judgment to be entered to relate back to the term when it should have been entered." [Dawson v. Waldheim, 89 Mo. App. 245.] ·

It is held that "It is not necessary that the records of the court show, in order to enable it to direct a judgment *nunc pro tunc*, in express terms that such judgment had been rendered; it is sufficient if the facts shown by the records are such as to reasonably carry conviction, that the judgment was in fact rendered." [Witten v. Robison, 31 Mo. App. 525.] "A *nunc pro tunc* entry must be treated as erroneous and void unless it contains the identical judgment of the court at a former term and conforms to the record memorandum of the judges and the clerk's minutes or other papers in the case existing or made at the time at which the case was decided." [State ex rel. v. Baldwin, 109 Mo. App. 573;

Page v. Chapin, 80 Mo. App. 159; Wilcox v. Railway, 135 Mo. App. 193, 115 S. W. 1061.] The law in this respect is well settled in this State.

But we believe, under the facts in this case, the rule is not applicable because the subject-matter is different. It is evident, taking into consideration the whole record, that all the different sessions of the court alluded to were adjourned terms of the regular May term for 1906. The recitation in the record at the beginning of each session that the court met pursuant to adjournment of the one last preceding and the final order of adjournment made on the 18th of July seem to us ought to be construed as showing a continued session of the court from its first regular meeting until the order was made for its final adjournment. Such being the case, it was competent for the court to enter the said *nunc pro tunc* orders. And, as the court had not finally adjourned when the entries referred to in the first instance were made, that the court met pursuant to adjournment, it had ample evidence of record for the *nunc pro tunc* orders.

And this view of the question is fortified when it is considered that the presumption of law is that a court of record, while sitting as such and performing its functions, is lawfully assembled. And the evidence offered here does not tend to rebut the presumption, that the court, consisting of the regular judges constituting that body in connection with the acknowledged county clerk, was lawfully assembled, but, on the contrary, supports it. The fact that the several judges met at these adjourned sessions is conclusive evidence that the regular term had not expired and the presumption is that they would not have assembled as a court unless there had been an adjourned session or upon statutory notice. Every presumption is indulged in favor of the legality of the sittings of the court. To look at the matter as we would any other, can there be any doubt of the fact

itself, that the sessions in question were adjourned sessions?

It is claimed that there was no publication of the result of the election as the law requires; therefore, the Local Option Statute was not in force in the county of Gentry. Section 3031, Revised Statutes 1899, provides that "if a majority of the votes cast at such election be against the sale of intoxicating liquors, the county court or municipal body ordering such election shall publish the result of such election once a week for four consecutive weeks in some newspaper in which the notice of election was published; and the provisions of this article shall take effect and be in force from and after the date of the last insertion of the publication last above referred to." The county court, after ascertaining and declaring the result of the election, ordered the same to be spread upon the records and then caused the following entry to be made, "And it is further ordered that the result of said election be published for four consecutive weeks in the Albany Capitol, the same newspaper in which notice of said election was published." There was no proof that the publication had or had not been made.

The defendant, in support of the view that proof of such publication should be made, relies upon the case, among others, of State v. Searcy, 39 Mo. App. 393. The court did not hold that it was necessary for the State to make out a prima-facie case to show that the result of election had been published. The syllabi are misleading in that respect. On the contrary, the proper inference to be drawn from the language of the court is that an order for such publication was sufficient. In State v. Hutton, 39 Mo. App. 410, the publication had been made, and it was a question in the case whether it was necessary for the county court to have found that it had been and entered its finding in the records. It was held that it was not necessary. In State v. Dugan, 110 Mo. 138, the court merely held that notice given of the result of

the election was sufficient, not that it must be proved to have been given.

This court has recently passed on a similar question, where it is held that "In a prosecution for the sale of liquor in violation of the Local Option Law, the State does not have to show as a part of its case that a notice of the election was given, though without such notice the election would be void." [State v. Foreman, 121 Mo. App. 502.] And in a more recent case, where the precise question was raised, we hold that "The record of the county court relating to the adoption of the Local Option Law need not show a return of the publication of the result where it shows the publication was ordered, and the burden to show a failure of such publication is upon the defendant." [State v. Oliphant, 128 Mo. App. 252.]

Lastly, it is contended that the State failed to prove that the offense was committed in Gentry county outside of the limits of the city of Stanberry. A witness for the State testified that the defendant sold him intoxicating liquor, but did not state in what place or in what county the sale was made. Another witness testified that defendant's place of business was in Whitton and that Whitton was about twelve miles from Stanberry. This was all the evidence upon the question as to where defendant made the sale.

There was a failure to prove the venue of the offense. It nowhere appears that the sale alleged to have been made was in the county of Gentry. Proof that defendant's place of business was in Whitton, twelve miles distant from Stanberry, was sufficient of course to show that it was not made within the corporate limits of that city. The court takes judicial notice of the boundaries of Gentry county, but we cannot take judicial notice that Whitton is in that county, and for aught we may know, except by inquiry, it may be in Nodaway county as the boundary line between that county and Gentry county is not distant from Stanberry twelve miles. It

is not claimed that Whitton is an incorporated municipality; we cannot, therefore, take judicial notice of its existence or location. It follows, therefore, that the State did not make sufficient proof of venue, for failure of which the cause is reversed and remanded. All concur.